**O**

# United States District Court
# Central District of California

PATRICK MENDOZA,

                Plaintiff,

   v.

FENIX AMMUNITION LLC,

                Defendant.

Case № 2:24-cv-1120-ODW (MRWx)

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS [14]**

## I.      INTRODUCTION

Plaintiff Patrick Mendoza brings this copyright action against Defendant Fenix Ammunition LLC ("Fenix"), alleging Fenix violated federal law by copying and distributing Mendoza's original copyrighted work—an image titled "Phoenix Rising"—without authorization. (*See* Compl., ECF No. 1.)  Pursuant to Federal Rules of Civil Procedure ("Rules" or "Rule") 12(b)(2) and (b)(3), Fenix now moves to dismiss Mendoza's Complaint for lack of personal jurisdiction and improper venue, or, in the alternative, to transfer the case to the U.S. District Court for the Eastern District of Michigan under 28 U.S.C. § 1404.  (Mot. Dismiss ("Mot." or "Motion"), ECF No. 14.)  For the reasons discussed below, the Court **DENIES** the Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II.   REQUESTS FOR JUDICIAL NOTICE

Concurrently with its Motion, Fenix requests that the Court take judicial notice of Mendoza's Complaint filed on September 26, 2021, in the United States District Court, Western District of Pennsylvania, Case No. 2:21-cv-01286, as well as two exhibits attached to that Complaint: (1) a copy of Mendoza's original copyrighted work; and (2) various captures of websites displaying infringing images. (Def.'s Req. Judicial Notice ISO Mot. ("RJN"), ECF No. 14-3.)  Mendoza also requests that the Court take judicial notice of a capture of Fenix's website taken by Archive.org's "Wayback Machine" on December 9, 2023. (Pl.'s RJN ISO Opp'n Ex. A ("Wayback Capture"), ECF No. 18-2.)  In relevant part, that page is titled "Shipping to Restricted States; New York and California Customers."[2]  The parties do not oppose each other's requests for judicial notice. (*See generally* Opp'n, ECF No. 18; Reply, ECF No. 19.)

"The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  The court may also take judicial notice of court filings and other undisputed matters of public record. *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007) (noting that courts "may take notice of proceedings in other courts . . . if those proceedings have a direct relation to matters at issue") (quoting *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992)).  All exhibits for which Fenix seeks judicial notice are court records.  Accordingly, the Court grants Fenix's request for judicial notice of these three documents.

A court may also review "unattached evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the

---

[2] Specifically, the webpage instructs California customers to provide a federal firearms license holder's shipping address when placing their Fenix orders. (*See* Wayback Capture.)

document." *Beverly Oaks Physicians Surgical Ctr., LLC v. Blue Cross & Blue Shield of Ill.*, 983 F.3d 435, 439 (9th Cir. 2020) (quoting *United States v. Corinthian Colls.*, 655 F.3d 984, 998–99 (9th Cir. 2011)). "Courts have taken judicial notice of internet archives in the past, including Archive.org's 'Wayback Machine,' finding that Archive.org possesses sufficient indicia of accuracy that it can be used to readily determine the various historical versions of a website." *EVO Brands, LLC v. Al Khalifa Grp. LLC*, 657 F. Supp. 3d 1312, 1322–23 (C.D. Cal. 2023) (collecting cases). Here, while Mendoza does not directly refer to the Wayback Capture in his Complaint, it is central to Mendoza's jurisdictional allegation that Fenix regularly does business in California. (*See* Compl. ¶ 7.) Moreover, Fenix does not oppose Mendoza's request, nor does it question the authenticity of the document or its contents. Accordingly, the Court grants Mendoza's request for judicial notice of the Wayback Capture.

For the reasons discussed, the Court **GRANTS** the parties' respective requests for judicial notice.

### III.    BACKGROUND[3]

Mendoza is a graphic artist with a large client base in California. (Compl. ¶ 7; Decl. Patrick Mendoza ISO Opp'n ("Mendoza Decl.") ¶ 3, ECF No. 18-1.) From 2013 to 2021, Mendoza resided in Los Angeles, California. (Mendoza Decl. ¶ 4.) In 2021, he relocated to Arizona but maintained the majority of his clientele in California. (*Id.* ¶ 5.) One of Mendoza's most popular artworks is "Phoenix Rising" (hereinafter, "the Work"), which he created in or about 2007 and registered with the

---

[3] It is well established that the Court may consider affidavits and other materials when weighing a motion to dismiss for personal jurisdiction under Rule 12(b)(2) without transforming the motion into a motion for summary judgment. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001); *Amba Mktg. Sys., Inc. v. Jobar Int'l. Inc.*, 551 F.2d 784, 787 (9th Cir. 1977). Similarly, when resolving a motion to dismiss under Rule 12(b)(3), the Court may consider supplemental materials. *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996). Accordingly, the following facts are derived from the well-pleaded allegations in Mendoza's Complaint, as well as the affidavits and exhibits submitted concurrently with Fenix's Motion and Mendoza's Opposition.

Copyright Office on June 29, 2010 (Reg. No. VAu 1-032-736).  (Compl. ¶ 8; Mendoza Decl. ¶ 6.)  On January 16, 2023, Mendoza additionally registered with the Copyright Office a derivative vector image of the Work (Reg. No. VA 2-339-417). (Compl. ¶ 9.)  Since creating the Work, Mendoza has discovered "innumerable third parties misappropriating the imagery," which he claims is often difficult to detect with reverse image search engines if the Work has been modified.  (Mendoza Decl. ¶ 6.)

Fenix is a Michigan limited liability company that assembles parts to make and sell ammunition.  (Compl. ¶ 3; Decl. Justin Nazaroff ISO Mot. ("Nazaroff Decl.") ¶¶ 3, 7, 10, ECF No. 14-2.)  Fenix's business operations are entirely based in Michigan, and its suppliers are based in Michigan, Utah, Kansas, and South Dakota. (Nazaroff Decl. ¶¶ 6, 10.)  Each of Fenix's corporate members and five employees resides in Michigan.  (*Id.* ¶ 8.)

On or about April 25, 2023, Mendoza discovered Fenix utilized a logo ("the Logo") bearing a striking similarity to the Work, with virtually identical lines and curves.  (Compl. ¶¶ 10, 12–13.)  Fenix adopted the Logo around the time of its founding in 2016.  (Nazaroff Decl. ¶¶ 3–4.)  The Logo appears prominently on Fenix's website, products, and packaging, and Mendoza alleges that Fenix derives substantial revenue from using it to promote its products.  (Compl. ¶ 11.)

In May 2023, Mendoza's brother, Chris Mendoza, sent Fenix three demand letters that included a California return address.  (Mendoza Decl. ¶ 7; *id.* Exs. B–D (collectively, "Demand Letters").)  Chris Mendoza identified himself as Mendoza's authorized agent and the Chief Operating Officer of Lunaverse Records, Inc. in Sierra Madre, California.  (*See* Demand Letters.)  On June 12, 2023, Fenix sent a response to the California address provided in the Demand Letters.  (Mendoza Decl. Ex. E ("Resp. Demand Letters").)

Mendoza alleges that Fenix continued its infringing use of the Work.  (Compl. ¶ 22.)  Mendoza also alleges that Fenix subsequently took numerous steps to expand its market in California.  (Decl. Daniel B. Lifschitz ISO Opp'n ("Lifschitz Decl.") ¶ 4,

ECF No. 18-3.)  For example, Fenix "celebrated" the September 2023 death of former California Senator Dianne Feinstein by temporarily offering free shipping to all California consumers.  (Compl. ¶ 5.)  Additionally, Fenix began to ship its products to California in customized packaging featuring the face of California Governor Gavin Newsom.  (*Id.* ¶ 5.)  Fenix regularly "boasts" of its sales to California residents on social media, and explicitly urges Californians to take advantage of Fenix's ability to make direct sales to California.  (Opp'n 2 (citing Fenix's social media posts).)

Fenix never obtained Mendoza's license, authorization, or consent to use the Work.  (Compl. ¶ 14.)  Mendoza seeks actual damages or, alternatively, statutory damages up to $150,000 per infringed work.  (*Id.* ¶ 20.)  Fenix now moves to dismiss Mendoza's Complaint for lack of personal jurisdiction and improper venue, or, in the alternative, to transfer the case to the Eastern District of Michigan.

**IV.        PERSONAL JURISDICTION**

Fenix first argues that the Court should dismiss Mendoza's Complaint for lack of personal jurisdiction under Rule 12(b)(2).  (Mot. 8–14.)

**A.    Legal Standard**

Federal courts have the power to exercise personal jurisdiction to the extent permitted by the laws of the states in which they sit.  Fed. R. Civ. P. 4(k)(1)(A).  "Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same."  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004); *see* Cal. Civ. Proc. Code § 410.10.  Thus, courts inquire whether the defendant "ha[s] certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  A non-resident defendant may be subject to either general or specific personal jurisdiction.  *Fed. Deposit Ins. Corp. v. Brit.-Am. Ins. Co.*, 828 F.2d 1439, 1442 (9th Cir. 1987).

When a party seeks dismissal under Rule 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the exercise of personal jurisdiction is proper. *Menken v. Emm*, 503 F.3d 1050, 1056 (9th Cir. 2007). When, as here, a motion to dismiss for lack of personal jurisdiction is based on written materials rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). "[U]ncontroverted allegations in the complaint must be taken as true." *Schwarzenegger*, 374 F.3d at 800. However, the plaintiff cannot "simply rest on the bare allegations of its complaint." *Id.* (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)). The court "may not assume the truth of allegations in a pleading which are contradicted by affidavit, but factual conflicts between dueling affidavits must be resolved in the plaintiff's favor." *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 978 (9th Cir. 2021) (internal quotation marks and citations omitted). "[B]are bones assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden." *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007) (internal quotation marks omitted). Nor will "random," "fortuitous," or "attenuated" contacts establish specific personal jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

**B.     Discussion**

The parties agree that Fenix is not subject to general personal jurisdiction. (*See* Opp'n 4; Reply 1 n.1.) Thus, the Court considers whether Fenix's contacts with California are sufficient to render the exercise of specific personal jurisdiction reasonable. To do so, the Ninth Circuit applies a three-prong test that asks whether: (1) the nonresident defendant purposefully directs activities or consummates some transaction with the forum state, or performs some act by which he purposefully avails himself of the privilege of conducting activities in that forum; (2) the claim arises out of or relates to the defendant's forum-related activities; and (3) the exercise of

jurisdiction comports with fair play and substantial justice, i.e., it is reasonable. *Schwarzenegger*, 374 F.3d at 802. The party asserting jurisdiction bears the burden of satisfying the first two prongs of the test, upon which the burden shifts to the party contesting jurisdiction to "present a compelling case" that the third prong—reasonableness—has not been satisfied. *Id.* (quoting *Burger King*, 471 U.S. at 462).

### 1.    *Purposeful Direction*

For claims sounding in tort, which include copyright infringement, the court applies a "purposeful direction" test and looks to "evidence that the defendant has directed his actions at the forum state, even if those actions took place elsewhere." *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015); *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010) (applying "purposeful direction" analysis to copyright infringement case). Under the Ninth Circuit's "effects" test, derived from *Calder v. Jones*, 465 U.S. 783 (1984), a defendant satisfies the purposeful direction prong of personal jurisdiction if he "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).

"'Intentional act' has a specialized meaning in the context of the *Calder* effects test," and should not be confused with allegations that a defendant acted willfully. *Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 673 (9th Cir. 2012). Thus, "although Fenix strenuously denies any allegations of intentional misconduct including under the Copyright Act," Fenix does not contest that it committed an intentional act for the purposes of this analysis, namely the marketing and sale of its goods. (Mot. 9.) Therefore, the Court analyzes only whether Mendoza has sufficiently pleaded the second and third elements of the *Calder* effects test.

### a.    Express Aiming

"The proper focus of the 'minimum contacts' inquiry in intentional-tort cases is 'the relationship among the defendant, the forum, and the litigation.'" *Walden v.*

*Fiore*, 571 U.S. 277, 285 (2014) (quoting *Calder*, 456 U.S. at 788). "And it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State." *Id.* "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* In *Walden*, the Supreme Court "made clear that we must look to the defendant's 'own contacts' with the forum, not to the defendant's knowledge of a plaintiff's connections to a forum." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Walden*, 571 U.S. at 287–88). "Following *Walden*, . . . a theory of individualized targeting may remain relevant to the minimum contacts inquiry, [but] it will not, on its own, support exercise of specific jurisdiction." *Id.* at 1070.

The operation of a commercial website may be enough to satisfy the requirement that conduct is "expressly aimed" at a forum. *Tire v. Mandala*, No. 8:20-cv-00502-JLS (KESx), 2020 WL 6153110, at *5 (C.D. Cal. Sept. 10, 2020) (*Mandala*). "[T]he Ninth Circuit utilizes a sliding scale analysis under which 'passive' websites do not create sufficient contacts to establish purposeful availment, whereas interactive websites may create sufficient contacts, depending on how interactive the website is." *Jeske v. Fenmore*, No. 8:08-cv-01015-DOC (MLGx), 2008 WL 5101808, at *4 (C.D. Cal. Dec. 1, 2008) (citing *Boschetto v. Hansing*, 539 F.3d 1011, 1018 (9th Cir. 2008)). "[T]he likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of the commercial activity that an entity conducts over the Internet." *Id.* (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)).

Specifically, when a foreign defendant operates a website that promotes and sells allegedly infringing products through statements that specifically target the forum in question, personal jurisdiction is appropriate. *See Levi Strauss & Co. v. Connolly*, No. 22-cv-04106-VKD, 2023 WL 2347433, at *5 (N.D. Cal. Mar. 2, 2023) (finding express aiming where foreign defendant's website "promotes and sells

allegedly infringing products through statements that appear to specifically target an American market."); *Mandala*, 2020 WL 6153110, at *5 (finding express aiming after plaintiffs made a prima facie showing that "a resident of California may visit Defendant's website, purchase the allegedly infringing tire stickers, and receive the merchandise through the mail in California.").

While most of Fenix's sales occur in Michigan, at least 1.6% of its sales (approximately $348,187)[4] have been to California customers. (*See* Nazaroff Decl., Ex. 3 ("Annual Sales"), ECF No. 14-7; *id.* Ex. 4 ("California Sales"), ECF No. 14-9.) This is "not . . . insubstantial." *Chien v. Bumble Inc.*, 641 F. Supp. 3d 913, 928 (S.D. Cal. Nov. 17, 2022) (finding revenue generated by California residents weighed in favor of personal jurisdiction, despite "the vast majority" of defendant's customers residing outside of California); *see also Ayla,* 11 F.4th at 981 (holding there is "no 'small percentage of sales' exception to the purposeful direction principles"). Moreover, these California sales appear directly related to Fenix's expressly aimed conduct in California—namely, targeting the California market based on political figures, events, and judicial rulings in the State. For example, Fenix conducted its most sales to California customers between September 2023 and May 2024. This coincides with Fenix's promotions related to the death of Senator Feinstein in 2023, (Compl. ¶ 5 n.1), Fenix's statements and customized packaging related to Governor Newsom in January and February 2024, (*id.* ¶ 5 nn.2–3), and Fenix's advertising of direct sales under a temporary district court injunction during the same time, (Opp'n 2). Fenix's website also provided instructions to obtain products through intermediaries during periods that direct sales were impossible due to the COVID-19 pandemic. (Compl. ¶ 5; Wayback Capture.) Therefore, Mendoza has made a prima facie showing that Fenix's intentional acts were expressly aimed at California.

---

[4] Although Fenix's redacted Profit & Loss statement does not explicitly state, these figures appear to be annualized on an "Accrual Basis."

Fenix argues Mendoza has failed to sufficiently plead express aiming because Fenix did not have knowledge of Mendoza's California residency or ownership in the Work. (Reply 2–3.) To the extent that the record does not refute this,[5] Fenix relies on misstated and outdated law. Relying on *Dole Food*, Fenix argues Mendoza must allege that Fenix *knew* Mendoza to be a California resident. (Reply 2 (citing *Dole Food*, 303 F.3d at 1111).) However, *Dole Food* cites *Bancroft & Masters, Inc. v. Augusta National Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000), which states "the requirement *is satisfied* when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." Such an allegation is sufficient, not necessary, to satisfy express aiming under *Dole Food*. Regardless, these cases predate *Walden*, which made clear that "a theory of individualized targeting" is merely "relevant to the minimum contacts inquiry." *Axiom Foods*, 874 F.3d at 1070.

Finally, the Court disagrees with Fenix that its California sales are "attenuated," and its promotions are "random," or "fortuitous." (*See* Reply 2.) "[T]he critical inquiry in determining whether there was a purposeful availment of the forum state is the quality, not merely the quantity, of the contacts." *Stomp, Inc. v. NeatO, LLC*, 61 F. Supp. 2d 1074, 1078 (C.D. Cal. 1999). Fenix's promotions relied on multiple events and circumstances unique to the California market that Fenix leveraged to successfully generate sales. Regardless of whether those sales are continuously sustainable, they resulted from Fenix's intentional targeting of California customers. And while minimal, Fenix's California sales also predate the sales made during the

---

[5] For example, Fenix relies on Mendoza's 2010 and 2023 Copyright Registrations to support its argument that it did not have knowledge of Mendoza's California residency. (Decl. Sean D. Flaherty ISO Mot. ("Flaherty Decl.") Ex. 9 ("2010 Registration"), Ex. 10 ("2023 Registration"), ECF Nos. 14-13, 14-14.) The 2010 Registration identifies Mendoza's address in Hermitage, Tennessee, and the 2023 Registration identifies Mendoza's address in Prescott, Arizona. This does not refute Mendoza's claim that he was a fulltime resident in California from 2013 to 2021. (*See* Mendoza Decl. ¶ 4.) Moreover, it demonstrates that Fenix knew about Mendoza's ownership in the Mark, at the very latest, by May of 2023. (*See* Demand Letters (providing 2010 and 2023 Registration numbers).)

injunction-related marketing scheme that Fenix argues were "fortuitous." (California Sales.) Considering Fenix's argument that California's prohibition on direct purchases presented significant challenges, (Mot. 3–5), it stands to reason that these earlier sales required similar targeting. In sum, Mendoza has plausibly demonstrated Fenix expressly aimed its conduct—in various ways, at various times, and with various degrees of success—at the California market. This satisfies the second element of the effects test.

### b. Harm

The third element of the effects test is satisfied if Mendoza sufficiently *alleges* a harm, as a factual showing is not required at this stage. *See Cal. Closet Co., Inc. v. Ebben*, No. C 08-0625, 2008 WL 1766767, at *4 n.2 (N.D. Cal. Apr. 15, 2008) (citing *Menken*, 503 F.3d at 1059). Here, Mendoza specifically alleges in his Complaint that Fenix's unauthorized use of the Work has and continues to cause harm and injury. (*See* Compl. ¶ 22.) Mendoza alleges he resided in California until 2021 and he maintains the clients he has been serving there since 2013. (*Id.* ¶ 2; Mendoza Decl. ¶¶ 3–5.) The Demand Letters, sent from a California business address on behalf of Mendoza in 2023, plausibly demonstrate that Fenix knew harm was "likely to be suffered" in California. *Dole*, 303 F.3d at 1111.

Fenix makes two arguments in support of its position that Mendoza has failed to satisfy the third element. First, Fenix argues Mendoza's LinkedIn page demonstrates that he derives most of his sales from designing video games rather than selling ammunition parts. (Mot. 11–12; Flaherty Decl. Ex. 8 ("Mendoza LinkedIn"), ECF No. 14-12.) Presumably, this supports the argument that the Logo is unlikely to affect the demand for Mendoza's work because his clients are dissimilar from Fenix's clients. However, at most, this demonstrates a factual dispute not appropriate for resolution on a motion to dismiss. In fact, Mendoza's brother stated in the first Demand Letter that Mendoza's association with Fenix's product was specifically damaging to Mendoza. (Demand Letters 7.) "Media coverage and published articles

11

where [Fenix] is the focus of content that is considered to be political . . . coupled with [Fenix's] reach on Twitter, namely over 82,000 followers, where some of its 20,000 plus Tweets regularly garner tens and hundreds of thousands of views . . . amplifie[d] [Mendoza's] concerns." (*Id.*)

Second, Fenix argues that Mendoza's 2021 relocation to Arizona demonstrates that any harm suffered was conclusively suffered in Arizona because Mendoza did not discover the alleged infringement until 2023. (Reply 3.) Fenix conflates accrual of a claim with injury. While discovery is significant for the purposes of determining whether Mendoza's claim is timely, it is not determinative of the locus of his injury. Here, Mendoza alleges that he was a fulltime California resident from 2013 to 2021, the majority of his business did and continues to come from California, and Fenix has been infringing his ownership in the Work since 2016. This plausibly demonstrates that some harm was felt in California. Whether the "bulk" of that harm occurred outside California is irrelevant. *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1207 (9th Cir. 2006) ("If a jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered in another state.").

Thus, Mendoza sufficiently pleads that Fenix knew Mendoza would likely suffer harm in California.

### 2.    *Arising Out of Forum Related Activities*

Next, Mendoza's claim must "arise[] out of or result[] from" Fenix's California-related activities. *Schwarzenegger*, 374 F.3d at 802. This requirement is met if a plaintiff would not have been injured "but for" a defendant's activities. *Panavision Int'l, L.P., v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998). Fenix argues Mendoza cannot satisfy this "but for" test because his claims would have arisen regardless of Fenix's sales to California. (Reply 5.)

Courts have found a defendant's conduct to arise out of forum-related activities where its website "allows customers to obtain information about Defendant's

[products], order products, and receive delivery of those products in California[.]" *Kauffamn v. Papa John's Int'l, Inc.*, No. 22-cv-1492-L-MSB, 2024 WL 171363, at *5 (S.D. Cal. Jan. 12, 2024) (finding the requirement met where defendant's website systemically served the California market by directing California customers to its restaurants and providing specific menus and offers to California residents).

Here, Fenix's website systemically served the California market by directing California customers to purchase products by shipping to a federal firearms license holder.   (Wayback Capture; Lifschitz Decl. ¶ 3.)   But for these instructions, Californians could not purchase Fenix's products bearing the infringing Logo. Additionally, Fenix provided specific offers to California residents, such as free shipping and customized packaging, bearing the infringing Logo, as well as packaging with the face of Gavin Newsom.  This is sufficient to demonstrate that Mendoza's claims "arise out of" Fenix's operation of its website and other promotional targeting of California residents.   Accordingly, Mendoza's claim is causally connected to Fenix's California activities.

3.   *Reasonableness*

Finally, a court's personal jurisdiction over a case must not offend "traditional notions of fair play and substantial justice."  *Int'l Shoe*, 326 U.S. at 316.  After the plaintiff establishes the first two prongs of the Ninth Circuit's test for specific personal jurisdiction, the burden shifts to the defendant to present a compelling case that it would be unreasonable to require the defendant to defend himself in the forum state. *Schwarzenegger*, 374 F.3d at 802; *Boschetto*, 539 F.3d at 1016 ("[T]he defendant must come forward with a 'compelling case' that the exercise of jurisdiction would not be reasonable." (quoting *Burger King*, 471 U.S. at 476–78)).

Courts weigh seven factors in evaluating whether exercise of jurisdiction is reasonable: (1) the extent of the defendant's personal interjection into the forum state's affairs; (2) the burden on the defendant; (3) conflicts of law between the forum and defendant's home jurisdiction; (4) the forum's interest in adjudicating the dispute;

(5) the most efficient judicial resolution of the dispute; (6) the plaintiff's interest in adjudicating the dispute; and (7) the existence of an alternative forum. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1021 (9th Cir. 2002) (citing *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487–88 (9th Cir. 1993)). "As no single factor is dispositive, a court must balance all seven." *Id.*

The parties agree, that the first factor is "analogous to the purposeful direction" factor. (Reply 5); *Ayla*, 11 F.4th at 984. Having concluded that Mendoza has sufficiently demonstrated purposeful direction, this factor weighs in favor of jurisdiction.

As to the second factor—the burden on the defendant—Fenix only argues that requiring its employees to testify would be a "significant drain on its resources as compared to defending the matter in Michigan." (Mot. 14.) Although Fenix may be inconvenienced by litigating this action in California, it "cannot show that this burden rises to the level of a constitutional concern." *Bohara v. Backus Hosp. Med. Benefit Plan*, 390 F. Supp. 2d 957, 962 (C.D. Cal. 2005) (quoting *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1213 (10th Cir. 2000)). As the Ninth Circuit has repeatedly observed, "[w]ith the advances in transportation and telecommunications and the increasing interstate practice of law, any burden [of litigation in a forum other than one's residence] is substantially less than in days past." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1080 (9th Cir. 2011) (second alteration in original) (quoting *Menken*, 503 F.3d at 1060). Notably, Fenix has already obtained local counsel in California, "which eliminates the potential burdens on counsel were the Court to require them to litigate in a different state." *Page v. Broberg*, No. 22-cv-06194-JSW, 2023 WL 105094, at *6 (N.D. Cal. Jan. 4, 2023). Therefore, the second factor weighs in favor of jurisdiction.

Fenix concedes there is no conflicting sovereignty, so the third favor weighs in favor or jurisdiction. (Mot. 14.)

14

As to the fourth factor—the forum state's interest—Fenix argues that California has no interest in resolving the dispute because neither Mendoza nor Fenix are California residents. (*Id.* at 20.) The Court notes that Mendoza is no longer a California resident. However, Mendoza was a California resident from 2013 to 2021, and he maintains a large California client base. (Mendoza Decl. ¶¶ 3–5.) By Fenix's own admission, it has been using the Logo since 2016. (Nazaroff Decl. ¶¶ 3–4.) Therefore, considering that Mendoza may be able to demonstrate he was harmed by this conduct during his residency in California, Mendoza has demonstrated that Fenix expressly and repeatedly targeted the California market and derived revenue from doing so. Together, these allegations implicate California's interests, and the third (Fenix concedes the third factor that there is no conflicting sovereignty) and fourth factors accordingly weigh in favor of jurisdiction.

As to the fifth factor—efficient judicial resolution—Fenix argues the controversy will be more efficient in the Eastern District of Michigan because the majority of Fenix's evidence and witnesses are in Michigan. (Mot. 14.) However, similar to the second factor, this is "no longer weighed heavily . . . given the modern advances in communication and transportation." *Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1124 (C.D. Cal. 2009) (quoting *Panavision*, 141 F.3d at 1323). This factor weighs slightly in favor of Fenix, though not significantly so.

The sixth factor—the plaintiff's interests—weighs in favor of jurisdiction, as "[t]he case was filed in California," "the parties have already engaged counsel and litigated in California," and "California is a more convenient forum for [the plaintiff]." *Alvi v. Eads,* No. 2:22-cv-00500-KJM-DB, 2022 WL 2239266, at *3 (E.D. Cal. June 22, 2022). California is additionally important to Mendoza's claims because they involve his business and clients, many of whom remain in the State.

Finally, it is undisputed that another forum exists. (*See* Reply 7.) However, the seventh factor "becomes an issue only when the forum state is shown to be

unreasonable." *Silk v. Bond*, 65 F.4th 445, 459 (9th Cir. 2023) (citations omitted). Thus, unless the other factors weigh against jurisdiction, this factor is neutral. *Lindora, LLC v. Isagenix Int'l, LLC*, 198 F. Supp. 3d 1127, 1145 (S.D. Cal. 2016). Here, only the fifth factor potentially weighs in favor of Fenix. The Court concludes the exercise of jurisdiction in this case is reasonable.

Fenix has failed to present a "compelling case" that the exercise of personal jurisdiction is unreasonable. *See Burger King*, 471 U.S. at 476–78. Because Mendoza has satisfied the test for exercising personal jurisdiction in California, Fenix's Motion to Dismiss for lack of personal jurisdiction is **DENIED**.

## V. VENUE

Fenix next argues the Court should dismiss Mendoza's Complaint for improper venue under Rule 12(b)(3) or, in the alternative, to transfer the case to the United States District Court for the Eastern District of Michigan. (Mot. 15.)

### A. Legal Standard

Venue in federal court is governed by statute. *See Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 55–57 (2013). If a case has been filed in the wrong judicial district or division, the court must "dismiss [the complaint], or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). If venue is improper and the defendant makes a timely objection, transfer or dismissal is mandatory. *See id.*; *Abrams Shell v. Shell Oil Co.*, 165 F. Supp. 2d 1096, 1102 (C.D. Cal. 2001) ("Where venue is *improper*, a court must dismiss *or* transfer under 28 U.S.C. § 1406[.]") (emphasis in original).

The plaintiff bears the burden of demonstrating the propriety of venue in the chosen judicial district. *See Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). All well pleaded allegations in the complaint are accepted as true unless contradicted by the defendant's evidence. *Mainstay Bus. Sols. v. Indus. Staffing Servs., Inc.*, No. CIV S-10-3344 KJM GGH, 2012 WL 44643, at *2

16

(E.D. Cal. Jan. 9, 2012). A court may examine facts outside the complaint to determine whether venue is proper. *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004). However, a court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff. *Id.* at 1138.

**B.     Discussion**

      1.     *Motion to Dismiss for Improper Venue*

Venue is proper if a civil action is brought in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). Here, venue is authorized by § 1391(b)(1) and (2).

With respect to § 1391(b)(1), a corporate defendant is considered a resident of "any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). Having concluded that Fenix is subject to personal jurisdiction in this judicial District, the Court also concludes venue is proper in this District pursuant to § 1391(c)(2).

With respect to § 1391(b)(2), "[c]ircuit courts are split on whether the statutory reference to 'events or omissions giving rise to the claim' requires courts to focus solely on defendant's activities, or to consider plaintiff's activities as well." *Volks USA Inc. v. A2 Hosting, Inc.*, No. 2:16-cv-4277-CAS (Ex), 2016 WL 6808113, at *3 (C.D. Cal. Nov. 16, 2026). "Relevant here, the Ninth Circuit has adopted the view that 'the locus of the injury' is a relevant factor in determining where a substantial part of the events or omissions occurred." *Id.* (citing *Myers v. Bennet L. Offs.*, 238 F.3d

1068, 1076 (9th Cir. 2001)).  As discussed above, Mendoza was a fulltime California resident when Fenix allegedly began using the infringing Logo and he maintains his business in California where Fenix increased its targeted marketing and sales using the infringing Logo.  Mendoza alleges that Fenix continues this conduct and Mendoza's business continues to suffer.  Mendoza has sufficiently alleged that a substantial part of the events or omissions giving rise to his claim, potentially including his injury, occurred in California.

Thus, the Court concludes that venue is proper in this District.

2.    *Motion to Transfer for Convenience*

Fenix moves, in the alternative, to transfer the case to the United States District Court for the Eastern District of Michigan.  When venue is proper, § 1404 gives the Court discretion, "in the interest of justice," to transfer an action to "any other district or division where it might have been brought" for "the convenience of parties and witnesses."    28 U.S.C.  § 1404(a)  (alterations omitted).    The moving party must establish that "a transfer will allow a case to proceed more conveniently and better serve the interests of justice."  *See Allstar*, 666 F. Supp. 2d at 1131.  The moving party must first show that the action "might have been brought" in the proposed transferee district based on subject matter jurisdiction, personal jurisdiction, and venue rules. *See Metz v. U.S. Life Ins. Co. in City of N.Y.*, 674 F. Supp. 2d 1141, 1145 (C.D. Cal. 2009).    If a defendant makes that showing, district courts must conduct "individualized, case-by-case consideration of convenience and fairness" regarding the parties, the witnesses, and other practical considerations.  *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

Here, it is undisputed that this action "might have been brought" in the Eastern District of Michigan.  (Mot. 16–17; *see generally* Opp'n.)  Thus, the Court considers whether it is convenient, practical, and fair to transfer the case.  Relevant factors include: (1) the location where the relevant agreements were negotiated and executed;

(2) the district that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective contacts with the forum of the moving and non-moving party; (5) contacts relating to plaintiff's cause of action that are present in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; (8) the ease of access to sources of proof in each forum; (9) the presence of a forum selection clause; and (10) any applicable public policy of that forum state (the "*Jones* Factors"). *See Jones*, 211 F.3d at 498–499.

"[T]hese factors cannot be mechanically applied to all types of cases" and should be considered "under the statutory requirements of convenience of witnesses, convenience of parties, and the interests of justice." *Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, No. 5:14-cv-01926 JAK (SPx), 2015 WL 12747820, at * 7 (C.D. Cal. Mar. 30, 2015) (quoting *Amazon.com v. Cendant Corp.*, 404 F. Supp. 2d 1256, 1259 (W.D. Wash. 2005)). "Substantial weight is accorded to the plaintiff's choice of forum, and a court should not order a transfer unless the 'convenience' and 'justice' factors set forth above weigh heavily in favor of venue elsewhere." *Catch Curve, Inc. v. Venali, Inc.*, No. 2:05-cv-04820-DDP (AJWx), 2006 WL 4568799, at *1 (C.D. Cal. Feb. 27, 2006). However, the Court notes that where the plaintiff is not a resident of the preferred forum, less deference is given to their choice of forum. *See Ainsworth v. Experian Info. Sols., Inc.*, No. 8:10-cv-01706-CJC (RNBx), 2011 WL 2135713, at *2 (C.D. Cal. May 12, 2011) (citing *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1107 (N.D. Cal. 2001)). The Court addresses the issues raised by the parties to the extent that they are relevant to the *Jones* Factors and not already resolved above.

First, Fenix argues inconvenience to the parties and witnesses favors transfer because neither party lives in California. (Mot. 17.) Fenix relies on various internet searches that purportedly demonstrate it is more practical economically for Mendoza to travel to Detroit, than for both parties to travel to Los Angeles. (Flaherty Decl.,

Exs. 11–13 (collectively, "Airfare"), ECF Nos. 14-15 to 14-17; *id.* Exs. 14–15 (collectively, "Hotels"), ECF Nos. 14-18 to 14-19.)   The Court finds these costs hardly persuasive.  The difference in Airfare is marginal.  (*See* Airfare.)  And while it may be "dramatically more expensive" to stay in a "5-star" hotel in Los Angles as compared to Detroit, (Hotels), this is narrowly selected data.  Fenix's argument that it will be disproportionally affected by travel costs because its own employees may need to testify, (Mot. 17), is speculative.  Fenix fails to identify "which witnesses it might potentially rely on at trial, the substance of such witnesses' testimony, or why said substance is material to the case."  *Stross v. NetEase, Inc.*, No. 2:20-cv-00861-AB (PJWx), 2020 WL 5802419, at *13 (C.D. Cal. Aug. 20, 2020) (alterations omitted) (finding that the sixth *Jones* Factor weighed against transfer under similar circumstances).  Therefore, this factor weighs against transfer in this case.

Next, Fenix argues the availability of compulsory process favors transfer because the Eastern District of Michigan can subpoena the individual that created the Logo, while the Central District of California cannot.  (Mot. 18.)  That individual was the "childhood friend" of Fenix's founder[6] who "worked at a print shop in Livonia, Michigan" when he created the Logo in 2016.  (Nazaroff Decl. ¶¶ 3–4.)  District courts may only compel a person's attendance via subpoena if the place of attendance is located "within 100 miles of where the person resides, is employed, or regularly transacts business in person," or "within the state where the person resides, is employed, or regularly transacts business in person" under certain circumstances.  Fed. R. Civ. P. 45(c)(1).  Thus, assuming this individual still works or resides in Livonia, Michigan eight years later, the transferee venue would have subpoena power.  However, the Court agrees with Mendoza that this is the only third-party witness Fenix has identified as relevant to its case.  (*See* Opp'n 17.)  Fenix also fails to demonstrate that the "childhood friend" of its founder would be unwilling to testify.

---

[6] Justin Nazaroff, his brother, and his father founded Fenix.  (Nazaroff Decl. ¶ 3.)  A childhood friend of Nazaroff's brother created the Logo.  (*Id.* ¶ 4.)

The "question is not whether the witnesses are beyond the reach of compulsory process, but whether it has been alleged or shown that witnesses would be unwilling to testify." *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1231 (9th Cir. 2011). The Court concludes this factor is either neutral or weighs slightly in favor of transfer.

Additionally, Fenix argues the access to physical evidence and other sources of proof are more readily available in the Eastern District of Michigan. (Mot. 18.) Specifically, Fenix states its "packaging, marketing, and sales documents" are located in Novi, Michigan. (*Id.*) "[T]he possibility that documents can be produced electronically does not alter the conclusion that the cost of litigation will likely be less if the case were venued in the forum where the evidence is located." *Glob. Decor, Inc. v. Cincinnati Ins. Co.*, No. 2:11-cv-2602-JST (FMOx), 2011 WL 2437236, at *5 (C.D. Cal. June 16, 2011) (quoting *Pat. Mgmt. Found., LLC v. Analog Devices, Inc.*, No. C 10-03530, 2011 WL 197831, at *4 (N.D. Cal. Jan. 20, 2011)). However, "given that advances in technology have made it easy for documents to be transferred to different locations," the "ease of access to documents does not weigh heavily in the transfer analysis." *Id.* (quoting *Metz*, 674 F. Supp. 2d at 1149). Fenix has not identified "any documentary evidence that is only available in hard copy, or explain[ed] what hardship [it] would suffer by transporting or producing these documents to a different district than where they are stored." *Martinez v. Knight Transp., Inc.*, No. 1:16-cv-01730-DAD-SKO, 2017 WL 2722015, at *7 (E.D. Cal. June 23, 2017) (finding that the eighth *Jones* factor was neutral with respect to the question of whether transfer was appropriate under similar circumstances). The Court finds this factor neutral in this case, as well.

Fenix further argues the Eastern District of Michigan has a greater interest in this case than the Central District of California. (Mot. 19.) "[I]f there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor." *Echologics, LLC v. Orbis Intelligent*

*Sys., Inc.*, No. 21-cv-01147-BAS-AHG, 2021 WL 5203283, at *8 (S.D. Cal. Nov. 9, 2021) (quoting *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009)). Here, it is true that Fenix is a Michigan resident and, therefore, Michigan has an interest in protecting its rights to defend this suit.  It is also true that Michigan has an interest in resolving claims that a Michigan corporation violated federal law in its operations within that state.  However, as discussed above, the alleged conduct expressly targeted the California market.  Thus, infringing conduct occurred in both Michigan (where Fenix created the Logo) and California (where it sent advertisements and products bearing the Logo).  Thus, not only does California have an interest in protecting Mendoza's right to seek relief for injury that occurred while he was a resident there, but it also has an interest in resolving claims inextricably linked to California citizens, elected officials, and judicial processes.

Finally, Fenix argues that transfer would "relieve some congestion" in this District, (Mot. 19), but Mendoza provides statistics supporting its counterargument that district courts in the Eastern District of Michigan are more "congested" than those in the Central District of California, (Opp'n 19).[7]  Therefore, the Court finds that this factor is neutral.

Accordingly, in totality, the balance of the *Jones* Factors weighs against transfer.  As Mendoza has carried his burden of showing that venue is proper, the motion to dismiss for improper venue is **DENIED**.[8]  Further, because Fenix has failed to carry its burden of showing that transfer is in the interest of justice, the Court **DENIES** Fenix's request to transfer the case to the Eastern District of Michigan.

[7] *Compare* U.S. District Courts-Combined Civil and Federal Court Management Statistics at p. 68 (Dec. 31, 2023) (showing median turnover in this District is 4.1 months for disposition and 29.7 months for trial) *with id.* at p. 40 (median case turnover in the Eastern District of Michigan is 7.8 months for disposition and 50.9 months for trial).

[8] Having found Mendoza has sufficiently pleaded facts establishing jurisdiction and proper venue, the Court declines to address Mendoza's request for judicial discovery.  (*See* Opp'n 27.)

## VI.   CONCLUSION

For the reasons discussed above, the Court **DENIES** Defendant's Motion to Dismiss.  (ECF No. 14.)

**IT IS SO ORDERED.**

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**